IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SCOTT A. MELBY,

                    Plaintiff,

v.

ANDREW M. SAUL,[1]
*Commissioner of Social Security*,

                    Defendant.

OPINION AND ORDER

18-cv-177-wmc

Under 42 U.S.C. § 405(g), claimant Scott Melby seeks judicial review of a final decision by the Commissioner of Social Security, which denied his applications for disability insurance benefits and supplemental security income. Again on appeal, Melby contends that his moderate limitations in concentration, persistence or pace were inadequately addressed by the ALJ, arguing that remand with instructions to award benefits from his alleged onset date of August 1, 2010 through February 21, 2012, is appropriate. For the reasons addressed below, the defendant's final decision is affirmed.

BACKGROUND

**A. Procedural Posture**

Melby originally filed applications for disability insurance benefits and supplemental security income on September 10, 2010. (AR 187, 191.) These applications were denied by his first administrative law judge on February 21, 2012, following an initial

---

[1] On June 4, 2019, the Senate confirmed Saul as the Commissioner of Social Security. Roll Call Vote 116th Congress - 1st Session, U.S. Senate (June 4, 2019), https://www.senate.gov/legislative/LIS/roll_call_lists/roll_call_vote_cfm.cfm?congress=116&session=1&vote=00133. Accordingly, the court replaces Nancy A. Berryhill as the defendant here. Fed. R. Civ. P. 25(d) ("The officer's successor is automatically substituted as a party.").

denial on November 16, 2010 and on reconsideration on May 6, 2011. (*See* AR 37, 47.) Following exhaustion of the administrative process, Melby appealed to this court arguing that the ALJ failed to incorporate his moderate limitations in concentration, persistence or pace into the hypothetical question posed to the vocational expert. On November 18, 2014, the parties stipulated to remand. (AR 628-30.)

On May 1, 2015, the Appeals Council affirmed the state agency's conclusion that Melby *had* become disabled by February 22, 2012, and remanding for a second ALJ to reconsider the period before that date, in light of the conclusion that Melby had moderate difficulties maintaining concentration, persistence *and* pace, but failed to include functional restrictions as to pace. (AR 635-36.) Following this remand, a new ALJ denied Melby's applications. (AR 528.) Again, the ALJ failed to completely address Melby's moderate limitations in concentration, persistence or pace, prompting Melby to appeal to this court a second time and the parties again agreed to a remand, which the court approved on May 2, 2017. (AR 1188-90.) This time, the Appeals Council remanded after finding the second ALJ "again did not fully address pace limitations," by either expressly including them in the RFC or explaining why they were not included. (AR 1194-95.)

After a hearing was held before a third ALJ, Melby's applications were again denied, this time in January of 2018.[2] (AR 1088.) Unsurprisingly, Melby also again appealed, arguing that the ALJ's hypothetical question to the vocational expert inadequately accounted for his mental impairments.

---

[2] The decision was first issued on January 9, 2018, but was then re-issued as amended on January 24, 2018. (*See* AR 1101-17 (Jan. 12, 2018 Decision); AR 1072-1088 (Jan. 24, 2018 Decision).)

### B. Hearing Testimony

Administrative law judges have now held hearings on Melby's applications in 2012, 2015, 2016, and 2017. During the 2015 hearing, the second ALJ asked the vocational expert about a similarly situated hypothetical individual who was precluded from "any fast-paced" or "high-production jobs" when "there's a fast pace set by someone else and he has to keep up with a constant quota demand." (AR 570-71.) The vocational expert identified a cashier position as one that would meet those limitations. (AR 571.) With an additional limitation of "routine, repetitive three- to four-step tasks and instructions and corresponding stressors," the vocational expert found that cashiering jobs would remain, and mail clerk and survey work would also be available. (AR 572.) Responding to claimant's counsel's questioning, the expert further opined that an individual who "loses attention and concentration for up to 15, 20 minutes at a time three or four times a day such that he gets confused or he forgets his procedure" would fall "outside of competitive employment." (AR 576-77.)

In 2016, an independent medical expert, Dr. Lace, opined that the restriction to "routine, repetitive tasks" addressed concerns about concentration, persistence and pace because "more complicated tasks generally require[,] from a psychological standpoint, more ability to focus and concentrate." (AR 584-85.) At that hearing, the ALJ's hypothetical included limitations to: "routine, repetitive tasks; brief, superficial contacts with others." (AR 590.) The hypothetical made no reference to "nonproduction pace" or the limitation of "simple" tasks. (*See* AR 1078.) The vocational expert opined that such a hypothetical individual could work as a bench assembler or an inspector/hand packager.

3

(AR 590-91.)

In contrast, at the most recent hearing, the vocational expert was asked about "a hypothetical individual of the Claimant's age," with specific limitations, including only performing "simple, routine tasks at a nonproduction pace." (AR 1140-41.) With these limitations, the expert identified available work as a bench assembler, electronics worker, or molding machine tender. (AR 1141.)

### C. ALJ's Decision

In the final January 2018 decision, Administrative Law Judge Micah Pharris began by noting that Melby's applications were before him following remand from this court and direction from the Appeals Council to analyze the pace limitation, further explaining that "the Appeals Council found the residual functional capacity either did not sufficiently address the moderate pace limitation or that the linkage between the limitation and the part b finding was not sufficiently articulated." (AR 1072.) The ALJ found that Melby had a moderate limitation in concentration, persistence or pace, noting: Melby's testimony that he had trouble concentrating; his activities suggesting "good concentration, persistence, and pace"; and support from "the medical expert's opinion and additional records." (AR 1077.)

Addressing the issue of concentration, persistence or pace, the ALJ noted that "claimant reported no difficulty concentrating, understanding, following instructions, remembering, or completing tasks." (AR 1080.) Likewise, the ALJ found Melby had "at least fair concentration persistence and pace," explaining that "the moderate finding is made to give the claimant every benefit of the doubt" because his depression was

documented in the record and "depression can affect motivation and increase distractibility."[3] (*Id.*) The ALJ went on to find that any limitation in concentration, persistence or pace was accommodated in the following ways:

1) Because "unskilled work is easier to perform at a given rate than skilled or semiskilled work," the "limitation to simple routine tasks, or unskilled work, inherently addresses some aspect of pace-based limitations."

2) The "limitation within the unskilled work arena to jobs not done at a production pace eliminates assembly-line-type jobs and other jobs that require an[] individual to maintain pace at a consistent level commensurate with their peers" and "allows for fluctuations in pace throughout the duty day and independent work so long as daily quotas are generally met."

3) The identified positions "are much more simple" and "require significantly less ability to maintain persistence and pace" as compared to "the claimant's past work, particularly the bookkeeping and management portions of that work" and could be "done independently."

(AR 1080-81.)

In particular, the ALJ relied heavily on an interrogatory response from Dr. Lace, who opined that Melby had "average concentration and task completion" and a moderate limitation in concentration, persistence, or pace for the period beginning in March 2012. (AR 1085.) At the September 2015 hearing, Dr. Lace also "assessed the same limitations" for the relevant time period. (*Id.*) The ALJ explained:

> Dr. Lace testified his limitation of the claimant to routine, repetitive tasks accommodates for difficulties in concentration, persistence, and pace. . . . He indicated that more complicated tasks generally require a greater ability to focus and concentrate from a psychological standpoint [so that] limiting the claimant to simple, routine tasks at a nonproduction pace, requires a lesser degree of concentration, persistence, and pace,

---

[3] The ALJ noted, however, that Melby was only diagnosed with depression in November 2011 -- three months before the relevant period ended -- and that his depression "does not support limitations greater than those provided in the residual functional capacity," including "no *additional* limitation . . . in concentration, persistence, or pace." (AR 1084 (emphasis added).)

5

> and sufficiently accommodates for any deficits in these areas. I specifically provided the limitation to nonproduction pace to accommodate for the claimant's limitations in pace, and in accordance with the Appeals Council's order.
>
> \* \* \*
>
> I find that Dr. Lace's analysis and testimony addresses the claimant's difficulties in concentration, persistence, and pace, and the specific limitation to nonproduction pace jobs further addresses any deficits in the claimant's pace. The claimant continued to work in his carpet cleaning business during the relevant time period which supports an ability to maintain concentration, persistence, and pace.

(AR 1085-86.) Accordingly, the ALJ concluded that Melby had the residual functional capacity to perform light work, with limitations, including only "simple, routine tasks at a nonproduction pace," and was not disabled during the period of August 1, 2010, through February 21, 2012. (AR 1078, 1088.)

## OPINION

Melby raises only one, albeit reoccurring, issue on appeal: Did the ALJ inadequately incorporate Melby's moderate limitations in pace? He contends that the answer is still "yes" because: (1) the ALJ inadequately followed the Appeals Council's direction to consider pace; and (2) the ALJ's finding that "the specific limitation to nonproduction pace jobs further addresses any deficits in the claimant's pace" was inadequately explained. The court disagrees on both counts.

Melby begins by noting the great similarity between the September 21, 2016, ALJ decision and the one currently on appeal, contending that the major difference is the addition of language "the specific limitation to nonproduction pace jobs further addresses any deficits in the claimant's pace." (Opening Br. (dkt. #9) 15.) This, Melby contends,

6

is inadequate in light of the impartial medical expert's opinion that Melby had "moderate to serious" limitations in pace and the ALJ's failure to explain the conclusion that "nonproduction pace" work accounted for this limitation. (*Id.* at 15-16.)

Claimant is correct that the excerpted language in his brief is substantially similar to that in the September 2016 ALJ decision. (*Compare* AR 526 *with* AR 1085-86.) However, claimant's argument ignores altogether the earlier portion of the *current* ALJ decision that further discusses the incorporation of Melby's moderate limitation in concentration, persistence, or pace into the ALJ's reformulation of his RFC. In particular, recognizing that Melby enjoys reading, watching television and gardening, the ALJ notes that Melby "doesn't really show ANY limitations to concentration, persistence, or pace" based on his activities of daily living and the objective findings, justifying the moderate limitation adopted to account for Melby's depression. (AR 1080.) The ALJ adds that under the regulations, "moderate" means that functioning is "fair" and that "claimant has at least fair concentration persistence and pace" based on his ability to engage in those activities. (*Id.*) Next, the ALJ explains that the limitations for simple, routine, non-production tasks were meant to address aspects of "pace-based limitations," especially because "no production pace work allows for fluctuations in pace throughout the duty day." (*Id.*) Likewise, the ALJ noted that the bench assembler, electronics worker or molding machine tender positions "require significantly less ability to maintain persistence and pace than claimant's other daily activities." (AR 1080-81.) This is sufficient to address any remaining concerns regarding the ALJ's consideration of Melby's pace limitations.

To the extent that claimant still contends that the ALJ inadequately outlined those

7

limitations in the hypothetical for the vocational expert, this contention also lacks merit. To the contrary, the ALJ identified specific limitations "to simple, routine tasks at a nonproduction pace." Moreover, the vocational expert explained that the identified jobs could be performed "at stationary work area, not on a rapid conveyor belt or assembly line and the person is largely working independently," such that "as long as people are meeting minimum production quotas over the course of an entire day they can essentially work at their own pace." (*See* AR 1140-42.) Accordingly, there is no basis to remand further nor to direct an award of additional benefits.

ORDER

IT IS ORDERED that the decision of defendant Andrew M. Saul, Commissioner of Social Security, denying Scott Melby's application for disability insurance benefits and supplemental security income for the period from August 1, 2010, to February 21, 2012, is AFFIRMED. The clerk's office is directed to enter judgment, and close this case.

Entered this 9th day of July, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge